Marc Y. Lazo, SBN: 215998
mlazo@kllawgroup.com
**K&L LAW GROUP, P.C.**
2646 Dupont Drive, Suite 60340
Irvine, California 92612
Telephone Number: (949) 216-4000
Facsimile Number: (800) 596-0370

Attorneys for Plaintiffs and Counterdefendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SUSAN BAKER, *et. al.*, | CASE No.: 2:20-cv-04335-JLS-KES |
| Plaintiffs, | |
| vs. | **PLAINTIFFS AND COUNTERDEFENDANTS' SPECIAL MOTION TO DISMISS AND REQUEST FOR REIMBURSEMENT OF ATTORNEYS' FEES** |
| DEAN MEILING, *et. al.*, | |
| Defendants. | |
| Chemeon Surface Technology, LLC, a Nevada limited liability company, | |
| Counterclaimant, | **[SUBMITTED CONCURRENTLY WITH REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MARC LAZO]** |
| vs. | Date:   November 6, 2020<br>Time:   10:30 a.m.<br>Dept:   10A |
| SUSAN BAKER, *et. al.*, | |
| Counterdefendants | |

-1-

PLAINTIFFS AND COUNTERDEFENDANTS' SPECIAL MOTION TO DISMISS UNDER NEV. REV. STAT. § 41.660 AND FOR ATTORNEYS' FEES

Plaintiffs and Counterdefendants SUSAN BAKER, *et. al.*, (hereinafter "Plaintiffs" or "Counterdefendants") hereby move the Court specially pursuant to Nev. Rev. Stat. § 41.660 for an order dismissing the entirety of Defendant and Counterclaimant CHEMEON SURFACE TECHONOLOGY, LLC's (hereinafter "Chemeon" or "Counterplaintiff") Counterclaim in this action. This Motion is based on this Notice, the Memorandum of Points and Authorities, the complete file and records of this Action, Request for Judicial Notice ("RJN") on file herein, and any such other and further evidence and arguments, both written and oral, as may be presented at the time of the hearing. This Motion is made following the conference of counsel pursuant to L.R. 7–3, during which Counterplaintiff made it clear that it will not voluntarily dismiss its Counterclaim.

Dated: July 9, 2020     K&L LAW GROUP, PC

By:_____
Attorneys for Plaintiffs and Counterclaim Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENTS

This action was originally filed on February 6, 2020, in the Superior Court of the State of California, County of Los Angeles. [*See* RJN, Ex. A - Complaint]. Several weeks after this action was removed to federal court, Chemeon filed its Answer and Counterclaim. [*See* RJN, Ex. B - Counterclaim].

The entire basis for Chemeon's Counterclaim hinges on the demonstrably false premise that it was a member of Metalast International, LLC (hereinafter "MILLC") and can therefore enforce the covenant not to sue set forth in section 10.3 of MILLC's Operating Agreement (hereinafter "OA"). [RJN, Ex. B, p. 17-18, para. 60, 62]. Alternatively, Chemeon also claims that it purchased the assets of MILLC and can therefore enforce the covenant not to sue set forth in section 10.3 of the OA. [RJN, Ex. B, p. 17-18, para. 61-62] Each of these assertions is demonstrably false. As explained below, Chemeon never had a membership interest in MILLC, and could never have had standing or been privy to the OA, rendering Chemeon's entire Counterclaim baseless. Quite simply, Chemeon cannot possibly enforce any provision in the OA, and as such cannot possibly demonstrate a substantial likelihood – or *any* likelihood – of prevailing on the merits.

Even more fundamentally, as set forth below, Chemeon's Counterclaim is based upon precisely the type of activity that governing anti-SLAPP laws seek to protect. Therefore, while Counterdefendants have filed a pending Motion to Dismiss, Counterdefendants also move this Court through this Special Motion to Strike the frivolous Counterclaim in its entirety, enter judgment against Chemeon, and award Counterdefendants their reasonable attorneys' fees pursuant to Cal. Civ. Proc. § 425.16.

## II. APPLICABLE LEGAL STANDARDS

MILLC's OA provides that Nevada law will govern its construction and application. [RJN, Ex. B, p. 17, para. 56-58]. The entirety of Chemeon's Counterclaim is based on the allegation that Counterdefendants breached the OA by filing suit. [RJN, Ex. B, p. 17-18, para. 62-67]. Therefore, the principles of anti-SLAPP are invoked and Nevada law

governs Chemeon's Counterclaim. Nevertheless, Nevada anti-SLAPP laws mirror those of California and are entirely consistent with governing case law in this Circuit. Thus, Nevada courts regularly rely on California case law to interpret and apply Nevada law in anti-SLAPP matters. *See, e.g.*, Nev. Rev. Stat. § 41.665(2); *Shapiro v. Welt*, 389 P. 3d 262, 268 (Nev. 2017) ("this court has recognized that California's and Nevada's anti-SLAPP 'statutes are similar in purpose and language,' [citation], [so] we look to California law for guidance").

"A person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev. Rev. Stat. § 41.650. "If an action is brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern . . . [t]he person against whom the action is brought may file a special motion to dismiss." Nev. Rev. Stat. § 41.660.

In Nevada, as with California, the adjudication of a special motion to dismiss is based on a two-prong test: (1) whether the preponderance of the evidence establishes that the claim(s) is based upon a good faith communication in furtherance of the right to petition or the right to free speech in connection with an issue of public concern; and, if so, (2) whether the plaintiff can demonstrate with *prima facie* evidence a probability of prevailing on the claim(s). Nev. Rev. Stat. 41.660(3)(a), (b). The statutory scheme further defines "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" as including, *inter alia*, any "[c]ommunication that is aimed at procuring any governmental . . . result or outcome" or any "[w]ritten or oral statement made in direct connection with an issue under consideration by a . . . judicial body, or any other official proceeding authorized by law." Nev. Rev. Stat. 41.637.

Furthermore, as with California, if a court grants a special motion to dismiss brought pursuant to Nev. Rev. Stat. § 41.660, "[t]he court **shall** award reasonable costs

and attorneys' fees to the person against whom the action was brought." Nev. Rev. Stat. § 41.670(1)(a) (emphasis added).

Anti-SLAPP special motions to strike or dismiss may be made in federal court. *E.g.*, *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005) (per curiam). In federal court, where, as here, an anti-SLAPP motion to strike "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), amended, 897 F.3d 1224 (9th Cir. 2018), and cert. denied sub nom. *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019).

As set forth below, Chemeon's Counterclaim falls squarely within the type of action which the governing anti-SLAPP laws were meant to protect, and because Chemeon could never prevail on the merits of its Counterclaim, this Motion should be granted in its entirety.

### III. <u>ARGUMENT</u>

#### A. <u>CHEMEON'S COUNTERCLAIM SEEKS TO IMPROPERLY IMPOSE LIABILITY BASED ON COUNTERDEFENDANTS' EXERCISE OF THEIR PROTECTED RIGHTS TO PETITION</u>

Anti-SLAPP laws exist in great part to protect citizens' essential right to petition the judiciary for redress. *John v. Douglas County Sch. Dist.*, 219 P.3d 1276, 1280–81 (Nev. 2009) (en banc). Thus, "statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." *Kenne v. Stennis*, 179 Cal. Rptr. 3d 198, 208 (Ct. App. 2014).

Here, the conduct complained of in Chemeons' counterclaim "falls squarely within the plain language of the anti-SLAPP statute." *Navellier v. Sletten*, 52 P.3d 703, 709-10 (Cal. 2002) (claims are within anti-SLAPP framework where, "but for the [existence of a] lawsuit and [defendants'] alleged actions taken in connection with that litigation,

plaintiffs' present claims would have no basis"). Chemeon's Counterclaim consists of a single count for breach of contract. [RJN, Ex. B, p. 18-19, para. 68-73]. That alleged breach of contract is solely rooted in Counterdefendants having filed suit against Chemeon. *Id*. This is admitted on the face of the pleading. Therefore, Chemeon's Counterclaim is clearly within the domain of the type of action the anti-SLAPP laws seek to protect.

Anti-SLAPP laws apply if protected litigation conduct is central to causes of action in a lawsuit. *Central Metal v. Central Bank*, 2015 WL 9025606, at *7 (Cal. Ct. App. 2015). Here, the conduct of which Chemeon complains is not just central to its sole cause of action; it forms the entire basis thereof. According to Defendant Chemeon's Counterclaim, pursuant to section 10.3 of MILLC's OA, members of MILLC agreed to not sue other members for any loss of investment in the company. [RJN, Ex. B, p. 17-18, para. 62-67]. Even if Counterdefendants' lawsuit successfully pleads a breach of the Operating Agreement – which it never could, as discussed below – petitioning a court for redress constitutes a protected right of petition that cannot be disturbed. *Allstate Ins. Co. v. Belsky*, 2017 WL 7199651, at *3 (D. Nev. 2017). Counterdefendants' right to petition is one of the essential rights that anti-SLAPP laws seek to protect. *John v. Douglas County School District*, 219 P.3d 1276, 1280–81 1276 (Nev. 2009).

Again, Plaintiffs' rights of petition are not just central, but are essential to the vitality of Chemeon's Counterclaim because its solitary cause of action could not exist but for Counterdefendants underlying suit. [RJN, Ex. B, p. 18-19, para. 68-73]. Therefore, Counterdefendants unequivocally meet the requirements for establishing the first prong of the anti-SLAPP analysis.

### B. THE PROBABILITY OF CHEMEON PREVAILING ON THE MERITS IS MORE THAN SUBSTANTIALLY UNLIKELY; IT IS NIL

Chemeon's Counterclaim alleges a single claim for breach of contract based on violation of the covenant not to sue and the duty of good faith as set forth in the OA. [RJN, Ex. B, p. 17-18, para. 62-63]. Chemeon alleges that it can enforce the OA against

1  Counterdefendants because of its acquisition of MILLC assets at a 2013 "credit bid" sale.
2  [*See generally*, Ex. B, p. 17, para. 61]. These allegations are demonstrably false.
3       First, D&M-MI, LLC was the foreclosing secured creditor at the November 4, 2013
4  foreclosure auction, not Chemeon. [*See* RJN, Ex. Exhibit D – Receiver's Ex Parte Motion
5  for Preliminary Approval of Sale of Assets, Approval of Bid procedures, & Setting of
6  Sale Hearing]. **Such directly belies the Counterclaim's allegations**, which claim that
7  *DSM Partners, LP's (hereinafter "DSM") membership shares were transferred to*
8  *Chemeon, and that Chemeon thus became a member of MILLC entitled to enforce the*
9  *provisions of the Operating Agreement*. [RJN, Ex. B, p. 17, para. 60]. Indisputably,
10 Chemeon was not yet even in existence at the time of the sale. [*See* RJN, Ex. E – Nevada
11 Secretary of State Entity Information for Chemeon Surface Technology, LLC]. Thus,
12 Chemeon was not the purchaser of the assets of MILLC and could never have become a
13 "member of MILLC and entitled to the benefits provided to members under the [OA]."
14 [RJN, Ex. B, p. 17, para. 60].
15      Moreover, there are no ultimate facts – or any probative facts whatsoever – that
16 indicate why or how Chemeon could have stepped into the shoes of D&M-MI, LLC, DSM
17 or any other entity or otherwise inherited any such entity's rights or assets. Even if such
18 allegations were present, as explained below, D&M-MI, LLC did not somehow become
19 privy to the OA or otherwise acquire standing to enforce any provisions therein by
20 purchasing the assets of MILLC. Thus, Chemeon could not have become privy or
21 otherwise acquired such standing. In fact, as set forth below, the OA prescribes a
22 particular procedure to allow a non-member to acquire the membership rights of a
23 member, which Chemeon did not do and could not have done.
24      Accordingly, Chemeon was never a member or manager of MILLC such that it
25 could avail itself of the protections under the OA. [*See* RJN, Ex. D]. It was formed in
26 April 2013, and never acquired or could acquire a membership interest in MILLC
27 subjecting it to the protections of the OA. [*See* RJN, Ex. E; RJN, Ex. F - Nevada Secretary
28 of State Entity Information for MI94, LLC]. Without contractual privity and/or

-5-

PLAINTIFFS AND COUNTERDEFENDANTS' SPECIAL MOTION TO DISMISS UNDER NEV. REV. STAT. § 41.660 AND FOR ATTORNEYS' FEES

membership status, Chemeon has no standing to bring the Counterclaim and therefore cannot prove, let alone prevail, on its sole breach of contract claim against Counterdefendants. Thus, Chemeon has no likelihood whatsoever of prevailing on the merits of its Counterclaim and the second prong of the Anti-SLAPP analysis is satisfied, warranting the granting of this Motion in its entirety.

### 1. Chemeon is Not and Could Never be Privy to the Operating Agreement and Therefore has No Standing to Sue

Chemeon cannot make a *prima facie* showing of its breach of contract claim. To establish such a claim, Chemeon must have standing to sue. "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724 (2008). Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992).

Chemeon must show proper standing *before* it can bring a breach of contract claim. To prevail under such a claim, Chemeon must allege: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).It is indisputable that Chemeon did not buy the assets of MILLC. [*See* RJN, Ex. D]. Nothing is alleged to indicate that Chemeon subsequently purchased the assets from D&M-MI, LLC, DSM or any other entity after the Receiver-conducted auction, or somehow acquired the assets, nor does Chemeon make any attempt to allege that it made any attempt to comply with the OA's procedures to effect a valid transfer, even if it was in existence. [*See generally* RJN, Ex. B]. Thus, Chemeon does not even have standing to sue under the OA because it cannot establish that it ever acquired any rights to enforce the OA or entitlement to invoke any protections thereunder. *Davis v. FEC*, 554 U.S. 724 (2008). Chemeon's lack

of standing to sue is a fatal defect which cannot be waived. *United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992).

In this regard, even if Chemeon could establish a chain of title that it later acquired the assets from the foreclosing secured creditor, D&M-MI, LLC, Chemeon has not shown, nor could it ever show, that it somehow stepped into the shoes of a ***member of Manager of MILLC*** entitled to enforce the OA. In this regard, D&M-MI, LLC's acquisition of MILLC's assets did not magically include a right to enforce the OA. As set forth below, the OA specifically states that for a member or Manager to transfer its membership interests, the transferee must comply with the mechanisms set forth in Section 6.3 in the OA. [RJN, Ex. C – Operating Agreement, Section 6.3].

Thus, where the MILLC's OA prescribes a particular procedure by which a member or Manager may transfer its membership interests, and D&M-MI, LLC indisputably did not – and could never – follow such procedure, Chemeon certainly is not entitled to attempt to enforce any provision in the OA. See *Weddell v. H2O, Inc.*, 128 Nev. 94, 103 (2012); see also *Olmstead v. F.T.C.* (Fla. 2010) 44 So.3d 76, 79 (providing that "an assignment of a membership interest will not necessarily transfer the associated right to participate in the LLC's management.").

Moreover, it is fundamental law that a foreclosing lender cannot acquire an interest that is greater than the totality of the interest that the debtor collateralized. See *In re Schwalb*, 347 B.R. 726, 741 (Bankr. D. Nev. 2006) (citing Nev. Rev. Stat. § 104.9203(2)(a)-(c); *In re Coupon Clearing Service, Inc*. (9th Cir. 1997) 113 F.3d 1091, 1102–1103. Thus, D&M-MI, LLC's status as foreclosing secured creditor did not magically transmute it into a member or manager of MILLC with the right to enforce the OA – or pass on any such right – which somehow magically inured to the ultimate benefit of Chemeon. Thus, even if any MILLC assets inured to the benefit of Chemeon by acquiring them from D&M-MI, LLC, such could never include the right to enforce the OA. Accordingly, Chemeon has no standing to sue for enforcement of the OA, and the entire Counterclaim must be dismissed.

-7-

Because Chemeon fails to overcome the initial threshold requirement of standing, it cannot bring its single cause of action for breach of contract.

## 2. **Chemeon was Never a Member or Manager of MILLC and Therefore Cannot Enforce the Covenant Not to Sue**

Chemeon has no standing to enforce any provision in the OA. It was not, and can never be, privy to the OA. Also, it could never be within the class of members or managers protected under the covenant not to sue contained in Section 10.3 of the OA. As explained below, at no point could any membership interest in MILLC have been transferred Chemeon—contrary to the allegations in the Countercomplaint. [*See* RJN, Ex. B, p. 17, para. 60].

### a. **MILLC and MI-94, LLC Could Not Have Effectuated any Member Interest Transfer Between 2013 and 2016 Because of Its Suspended Corporate Status**

There is further reason why the Counterclaim can never pass legal muster. According to the Nevada Secretary of State, the corporate records for MILLC show an Amendment on 12/16/2013 reflecting a name change to MI-94, LLC. [RJN, Ex. F]. As set forth above, this name change was procured by the Receiver prior to the termination of his receivership. These records also show the Resignation of Registered Agent by the receiver James Proctor on February 5, 2014. MI-94, LLC was thus without a manager while it was suspended, until it was reinstated in 2016 by a Certificate of Reinstatement. [RJN, Ex. F]. MI-94, LLC thus could not have conducted any formal business from 2014 until it was reinstated on September 2, 2016, since a Nevada limited liability company is required to have a manager in order to operate. [RJN, Ex. F]. See Nev. Rev. Stat. § 86.161(d). Thus, even if an assignment had been made to Chemeon anytime between December 2013 and September 2016, it would be invalid because MILLC was suspended and could not conduct any business activities. Nev. Rev. Stat. §§ 86.5465, 86.274. Moreover, any such assignment would have necessarily come from MI-94, LLC, which again could not have happened any earlier

-8-

than March of 2015 when Chemeon came into existence (during which time MI-94, LLC was suspended and thus prohibited from conducting business) . [*See* RJN, Ex. E; RJN, Ex. F]  For this additional reason, the Counterclaim cannot possible succeed.

### b. Apart from MILLC and MI-94, LLC's Suspended Corporate Status, Chemeon Could Never Legitimately Allege That any Membership Shares Were Transferred to Chemeon

Chemeon alleges that it acquired its membership interest from DSM. [RJN, Ex. B, p. 17, para. 60].  This allegation is not only conclusory; it is false. The Counterclaim myopically alleges that "DSM's membership shares were ultimately transferred to Counterclaim Plaintiff, which thus became a member of MILLC and entitled to the benefits provided to the members under the Operating Agreement." [RJN, Ex. B, p. 17. 60. Tellingly, the Counterclaim is silent as to how Chemeon acquired DSM's "membership shares." It is noteworthy that conclusory allegations in a pleading cannot form the basis of a cognizable cause of action. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007). The mere conclusory allegation contained in paragraph 60 is not a substitute for charging factual allegations showing how and when Chemeon became a member of MILLC.

The OA provides for only two avenues by which Chemeon could have acquired DSM's membership interest and the concomitant protections provided pursuant to the OA—neither of which occurred.

1) First, by transfer of membership interest subject to the unanimous prior written approval of all of the other members pursuant to section 6.3 of the Operating Agreement. [RJN, Ex. C, Section 6.3].
2) Second, by transfer of membership to a "trust or corporation in which the Member is the majority beneficial owner," which transfer is invalid <u>unless</u> the transferee agrees in writing to assume all of the obligations and undertakings of the transferor  under the terms of this Operating Agreement and executes <u>and</u>

-9-

delivers the Operating Agreement to the president or Manager pursuant to paragraph 6.4 of the Operating Agreement. [*See* RJN, Ex. B; RJN, Ex. C, Section 6.3].

This could not ever have occurred with Chemeon because Chemeon did not come into existence until two years *after* MILLC ceased to exist. [*See* RJN, Ex. E; RJN, Ex. F]. Chemeon cannot be a member of an LLC which does not exist, and neither of the foregoing actions was taken – or alleged to be taken – involving any membership transfer to Chemeon. [*See* RJN, Ex. E; RJN, Ex. F]. Chemeon has not and cannot show that it received unanimous prior written approval of all of the other members for transfer.

For the same reason, Chemeon could not have signed any assumption of obligations as required to establish the validity of any purported transfer from DSM to Chemeon, nor can DSM allege that it was a "major beneficial owner" of Chemeon at the time of the transfer.  Moreover, even if it could, Chemeon would still have had to "agree in writing to assume all of the obligations and undertakings of the transferor under the terms of this Operating Agreement" to render any transfer valid.  Thus, DSM could never have assigned any interest it purports to have owned in MILLC to Chemeon, reinforcing that Chemeon has never been privy to the OA and could never have any standing to enforce any provision contained therein against Counterdefendants.

It goes without saying that if Chemeon had the evidence to allege any facts substantiating either transfer mechanism set forth in the OA, it would have alleged those facts to substantiate its Counterclaim. Again, Chemeon could never legitimately allege that DSM's membership shares were transferred to Chemeon. [*See* RJN, Ex. A, p. 17, para. 60]. Therefore, Chemeon was never a manager or member of MILLC entitled to the protections of the OA.

Because Chemeon has no standing to enforce the OA against any of the Counterdefendants and could never be a member or have Manager status, it can never prevail on the merits of its Counterclaim. Thus, the second prong of the anti-SLAPP analysis is entirely satisfied.

### C. COUNTERDEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES

Counterdefendants are entitled to attorneys' fees under the terms of the OA, Nevada law, California law, and the Court's inherent power.

Pursuant to the terms of MILLC's OA, Counterdefendants are entitled to attorneys' fees. Section 12.2 of the OA states: "In the event any party hereto should commence legal proceedings to enforce any of the terms of this Operation Agreement, the prevailing party in the legal proceeding shall be entitled to a reasonable sum as attorneys' fees and costs as may be allowed by the Court." [RJN, Ex. B, p. 18, para. 64]. This Motion qualifies as such.

Moreover, under Nevada state law, if the court grants a special motion to dismiss, the court shall award reasonable costs and attorney's fees to the person against whom the action was brought. Nev. Rev. Stat. § 41.670(1)(a). Furthermore, the court may award in addition to reasonable costs and attorney's fees awarded an amount of up to $10,000 against whom the action was brought. Nev. Rev. Stat. § 41.670(1)(b).

If the moving defendant prevails on a special motion to strike, attorneys' fees are awarded as part of the statutory costs of defending the lawsuit, in contrast to how the plaintiff who successfully demonstrates a *prima facie* case must show that the anti-SLAPP motion was objectively "frivolous." (Code Civ. Proc., § 425.16, subd. (c); *Jarrow Formulas*, supra, 31 Cal.4th at p. 740; *Decker*, supra, 110 Cal.App.4th at p. 1392 [fees are awarded to prevailing defendant as a matter of right, but fees awarded to plaintiff as sanctions require factual findings which demonstrate "any reasonable attorney would agree such motion is totally devoid of merit."].)

Because the anti-SLAPP motion takes statutory priority in ascertaining the bona fide merits of the claim, even if the action is voluntarily dismissed by the plaintiff before the hearing on the special motion to strike, or because of some other procedural defect, the defendant is still entitled to the "merits" hearing under section 425.16, and if successful, an award of attorneys' fees in defending any claims dismissed. (*Liu v. Moore* 69 Cal.App.4th 745, 751-754 (Ct. App. 1999) [voluntary dismissal required determination

-11-

on the merits, otherwise "plaintiff succeeded in chilling the valid exercise of constitutional rights"]; *White v. Lieberman* 103 Cal.App.4th 210, 220-221 (Ct. App. 2002) [claim barred by statute of limitations was an improper SLAPP; hence, defendant entitled to fees] (White); accord *Pfeiffer Venice Properties v. Bernard* 101 Cal.App.4th 211, 218-219 (Ct. App. 1999).) The fee award should be sufficient to compensate the defendant for the cost of defending the improper action, or at least that portion of it which constituted a SLAPP. (*ComputerXpress*, supra, 93 Cal.App.4th at pp. 1019-1020 [defendant who prevailed on only five of nine causes of action, entitled to dismissal and statutory fees and costs on those claims].) Compare cases limiting award to fees incurred only in connection with the motion itself – *Marcias*, supra, 55 Cal.App.4th at p. 675 [$44,445]; *Lafayette Morehouse*, *Inc. v. Chronicle Publishing Co.* 39 Cal.App.4th 1379, 1383-1384 (Ct. App. 1995); *Dove Audio*, supra, 47 Cal.App.4th p. 785 [trial court awarded $28,296] – with cases opting for the "entire action" or "all proceedings" theory of recovery – *Coltrain v. Shewalter* 66 Cal.App.4th 94, 96 (Ct. App. 1998) [affirming trial court award of $73,000].

Here, no reasonable attorney would ever have brought Chemeon's Counterclaim in light of the foregoing points and authorities. The Counterclaim asserts a single cause of action solely based on Counterdefendants having filed suit, which is squarely not permitted under the law. Therefore, Counterdefendants are entitled to recover reasonable attorneys' fees incurred in defending against Chemeon's Counterclaim.

In this regard, as set forth in the accompanying Lazo Declaration, Counterdefendants have incurred $37,700.00 in attorneys' fees in being forced to seek dismissal of the frivolous Counterclaim. In conjunction with its order of dismissal, this Court is respectfully requested to award Counterdefendants this sum.

## IV.   CONCLUSION

Chemeonʹs Counterclaim is based entirely upon essential rights that are protected activities as clearly defined by California and Nevada anti-SLAPP laws. It has not and cannot make a *prima facie* showing that it will ever probably succeed on the merits of its single counterclaim. To the contrary, it will almost certainly fail instead. Therefore,

1  Chemeon's Counterclaim is objectively baseless and contrary to well established anti-
2  SLAPP law. Thus, the Court should strike the Counterclaim, enter judgment against
3  Chemeon, and award Counterdefendants their reasonable attorney's fees in the amount of
4  $37,700.00.

Dated: July 9, 2020                    K&L LAW GROUP, PC

                                       By:_____
                                       Attorneys for Plaintiffs and Counterclaim
                                       Defendants

PLAINTIFFS AND COUNTERDEFENDANTS' SPECIAL MOTION TO DISMISS UNDER NEV. REV. STAT. § 41.660 AND FOR ATTORNEYS' FEES